**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **P. T. T.,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **Case No. 4:26-cv-108-CDL-CHW** |
| | : | **28 U.S.C. § 2241** |
| **Warden, STEWART DETENTION CENTER,[1]** | : | |
| | : | |
| | : | |
| **Respondent.** | : | |
| | : | |

**ORDER AND RECOMMENDATION**

Before the Court is Petitioner P.T.T.'s application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) as well as Petitioner's Motion for Immediate Release (Doc. 4). For the following reasons, it is **RECOMMENDED** that Petitioner's application for habeas relief (Doc. 1) and Motion for Immediate Relief (Doc. 4) be **DENIED**.[2]

**BACKGROUND**

Petitioner, a native and citizen of Vietnam, was admitted to the United States on May 21, 1986, and obtained lawful permanent resident ("LPR") status on October 20, 1989 (Doc. 5-1 at ¶ 3) (citing Exhibit A). On October 12, 1998, the Superior Court of Cobb County, Georgia convicted Petitioner of Entering an Automobile (two counts), Possession of Tools for the Commission of a

[1] [T]he default rule [for claims under 28 U.S.C. § 2241] is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citations omitted). The Clerk's office is **DIRECTED** to change the docket to reflect the Warden of Stewart Detention Center as the sole appropriately named respondent in this action.

[2] Petitioner also filed an emergency motion to rule on his application for habeas relief (Doc. 7). Petitioner's emergency motion is **TERMINATED** as moot.

Crime, and Obstruction of a Law Enforcement Officer (two counts), for which he was sentenced to imprisonment for one year. (Doc. 5-1 at ¶ 4) (citing Exhibit B). On August 24, 1999, the Immigration and Naturalization Service ("INS") took Petitioner into custody and served him with a Notice to Appear charging him with deportability for having been convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).[3] *Id*. at ¶ 5 (citing Exhibit A). On November 4, 1999, an Immigration Judge ("IJ") ordered Petitioner's removal to Vietnam. (*Id*. at ¶ 7) (citing Exhibit C). Petitioner subsequently appealed the removal order, and on February 24, 2000, the Board of Immigration Appeals dismissed Petitioner's appeal. *Id*. at ¶ 8. On August 31, 2001, Petitioner was released from Immigration and Customs Enforcement and Removal Operations ("ICE/ERO") custody on an Order of Supervision ("OSUP") ("the 2001 OSUP"). *Id*. at ¶ 9.

On November 12, 2009, Petitioner was convicted in the United States District Court for the Northern District of Georgia for Conspiracy to Possess with the Intent to Distribute Methylenedioxymethamphetamine and Conspiracy to Possess with the Intent to Distribute Marijuana ("the 2009 convictions") and was sentenced to serve seventy-six (76) months in prison. *Id*. at ¶ 10 (citing Exhibit D). Petitioner was re-released on the 2001 OSUP after serving his sentence for the 2009 convictions.[4] *Id*. at ¶¶ 9-11. On October 14, 2025, Petitioner was arrested by ICE/ERO when he reported to the ICE office in Atlanta, Georgia. *Id*. at ¶ 11. On December 8, 2025, ICE/ERO served Petitioner with travel document information to submit a travel document

---

[3] This statute provides in relevant part:

> Any alien who is convicted of an aggravated felony at any time after admission is deportable.

8 U.S.C. § 1227(a)(2)(A)(iii).

[4] Although neither Petitioner nor Respondent provided any information regarding whether a second OSUP was issued after Petitioner served time for his 2009 convictions, it is evidenct that Petitioner was released from custody after serving time for the 2009 convictions, as he was later arrested on October 14, 2025, while reporting to the ICE office in Atlanta, Georgia.

request. *Id*. at ¶ 13. On January 1, 2026, ICE/ERO requested information on Petitioner from the National Records Center to obtain the necessary travel documents request ("TDR"). *Id*. at ¶ 14.

On January 21, 2026, Petitioner filed this Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, three months after his October 2025 arrest. (Doc. 1). Petitioner asserted three grounds in his petition. (Doc. 1). In Ground One, Petitioner alleged his continued detention is a statutory violation of 8 U.S.C. § 1231(a)(6). *Id*. at ¶¶ 21-2. In Grounds Two and Three, Petitioner alleged his detention is a violation of both substantive and procedural due process. *Id*. at ¶¶ 23-7. Petitioner relied on the *Zadvydas* decision as the basis of his allegations in all three counts.[5] *Id*.; *see also Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491 (2001).

On March 5, 2026, ICE/ERO sent the forms needed to Lionbridge for translation and completion of the TDR. Doc. 5-1 at ¶ 15. On March 12, 2026, ICE/ERO completed the TDR and sent the forms to ERO Headquarters after Lionbridge returned the translated documents. *Id*. at ¶ 16. On March 16, 2026, Petitioner filed a Motion for Immediate Release before a response was required by Respondent. (Doc. 4). Petitioner again relied on the *Zadvydas* decision in his preliminary Motion for Immediate Release. *Id*. at 1.

On March 31, 2026, Respondent filed a timely Response, analyzing Petitioner's assertions under 8 U.S.C. § 1231(a)(6), the second prong of the test outlined in the *Zadvydas* decision. (Doc. 5). The same day, ICE/ERO revoked Petitioner's 2001 OSUP and attempted to interview Petitioner. (Doc. 5-1 at ¶ 17) (citing Exhibit F). ICE/ERO provided Petitioner with a Notice of Revocation of

[5] Petitioner asserts that his removal order became final on the date his removal order was entered: November 4, 1999. (Doc. 1 at ¶ 20). Petitioner does not provide a date on which the six-month presumptively reasonable removal period ended on under the *Zadvydas* decision. *Id*.; see also *Zadvydas v. Davis*, 533 U.S. 678 (2001) (holding that there is a six month presumptively reasonable time period after detention under 8 U.S.C. § 1231(a)(6).

Release indicating that the 2001 OSUP was revoked "…pursuant to 8 C.F.R. § 241.13(i) for the following reason(s): . . . ICE is seeking a travel document to effect your expeditious removal to Vietnam." (Doc. 5-1, Exhibit F). This reason is marked and listed under the second subsection of 8 U.S.C. § 241.13(i) on the Notice: "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." *Id*. After receiving said Notice, Petitioner declined to participate in an interview on March 31, 2026. *Id*. (citing Exhibit G).

On May 12, 2026, Petitioner sent a letter to this Court indicating that ICE/ERO was still unable to complete travel documents to Vietnam. (Doc. 6). On July 27, 2026, Petitioner filed an Emergency Motion to Rule Pursuant to 28 U.S.C. § 2241. (Doc. 7). Petitioner reiterated his argument that he is entitled to release under *Zadvydas*. *Id*. at 2. As discussed infra, Petitioner and Respondent both miss the mark by disregarding the first prong of the *Zadvydas* decision.

**DISCUSSION**

Petitioner claims that he is entitled to release under *Zadvydas* because he has been detained longer than the presumptively reasonable six-month period and his removal is not likely in the reasonably foreseeable future. Petitioner has failed to show, however, that he has been detained for longer than six months as of the date of Petitioner's filing. Consequently, Petitioner's Section 2241 Petition and Motion for Immediate Release should be dismissed.

Generally, ". . . the Attorney General shall remove the alien from the United States within a period of 90 days" after an alien is ordered removed. 8 U.S.C. § 1231(a)(1)(A). The ninety-day removal period starts on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of an alien, the date of the court's final order.

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id*. at 1231(a)(1)(B)(i)-(iii).

While this ninety-day removal period takes place, ". . . the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title." 8 U.S.C. § 1231 (a)(2)(A). An alien may be detained beyond the ninety-day removal period if said alien is ". . . ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . ." 8 U.S.C. § 1231(a)(6). The Supreme Court of the United States further interpreted 8 U.S.C. § 1231(a)(6) to include detention beyond the ninety-day period if it is "reasonably necessary" to effectuate removal in *Zadvydas*. 533 U.S. 678; see also 8 U.S.C. § 1231(a)(6).

The *Zadvydas* Court recognized six months as a presumptively reasonable time period to allow the government to accomplish removal under 8 U.S.C. § 1231(a)(6). *Zadvydas*, 533 U.S. at 701. The Eleventh Circuit explained that a *Zadvydas* claim requires a two-part showing by the petitioner: "…an alien must show that: (1) he has been detained for more than six months following the final order of removal and (2) there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Vaz v. Skinner*, 634 F. App'x 778 (11th Cir. 2015); (*relying on Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir.2002)). Once the petitioner has met his burden to show the two *Zadvydas* prongs, the burden shifts to the respondent to rebut that showing. *Zadvydas*, 533 U.S. at 701.

Petitioner's initial burden to show that he has been detained more than six months (i.e. *Zadvydas* prong one) is strictly construed to "…serve as a gatekeeping function to ensure that federal courts are not unnecessarily weighed down with hasty complaints by impatient illegal aliens who seek premature release back into American communities." *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1364 (N.D. Ga. 2002). The United States Courts for the Middle District of Georgia have consistently held that a petitioner's detention period does not begin until he or she is in ICE custody after serving any criminal prison sentence. *Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42-CDL, 2018 WL 1321576, at *4 (M.D. Ga. Mar. 14, 2018) ("A strong argument exists that the *Zadvydas* removal period did not even begin until . . . Petitioner was returned to ICE custody after serving his criminal prison sentence."); see also *M.K. v. Warden, Stewart Det. Ctr.*, No. 4:23-cv-136-CDL-MSH (M.D. Ga. filed Oct. 19, 2023), report and recommendation adopted, No. 4:23-cv-136-CDL-MSH (M.D. Ga. filed Dec. 1, 2023)("Finding Petitioner's current detention presumptively unreasonable because of a period of detention occurring over eleven years ago would effectively eviscerate § 1231(a)'s purpose of allowing the Government time to arrange for an alien's removal, including contacting foreign consulates and obtaining necessary travel documents"); *J.A.S. v. Warden, Stewart Det. Ctr.*, No. 4:25-cv-244-CDL-CHW (M.D. Ga. filed Oct. 27, 2025), report and recommendation adopted, No. 4:25-cv-244-CDL-CHW (M.D. Ga. filed Dec. 31, 2025) (finding that Petitioner's Motion to Dismiss was premature because Petitioner failed to prove that he was detained for more than six months from the time of detainment to the time of filing his petition).

Petitioner's removal period did not begin until October 14, 2025, when he was arrested after reporting to the ICE office in Atlanta, Georgia. (Doc. 1 at ¶ 6); see also (Doc. 5-1 at ¶ 11) (citing Exhibit E). Petitioner filed his Section 2241 Petition on January 15, 2026. (Doc. 1). Only

three months passed between Petitioner's detainment and the filing of his Section 2241 Petition. (Doc. 1). Although Petitioner's detention has now passed the six-month presumptively reasonable time frame, and a Section 2241 petition filed today or tomorrow would not be dismissed as premature, the Eleventh Circuit has made it clear that the "six-month period… must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*." *Akinwale*, 287 F.3d at 1052 (affirming "dismissal without prejudicing [the petitioner's] ability to file a new § 2241 petition in the future that may seek to state a claim upon which habeas relief can be granted"). Petitioner is not prohibited from filing a subsequent petition, but case law indicates no alternative to dismissing his current petition as premature. Therefore, Petitioner fails to meet his burden of proof under the first *Zadvydas* prong to show that he has been detained over six months from the time of detainment to the time of filing his Petition.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that Petitioner's application for habeas corpus relief (Doc. 1) and Motion for Immediate Release (Doc. 4) be **DISMISSED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 7th day of August, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge